UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-309 |
| | ) | |
| KEN ROLAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Williams Thompson believes that the Peru, Indiana Police Department and three of its officers had it out for him because within a one-year period he was arrested three times for traffic offenses. In his Complaint, Thompson claims that he was arrested without probable cause, that the police used excessive force on him, and that they engaged in a conspiracy to violate his civil rights in violation of 42 U.S.C. §§ 1983 and 1985 and Indiana state law. Other claims brought by Thompson against the Miami County Sheriff, Dr. Michael Jones, and other unknown medical staff are not presently before me. The Peru Police Department and three individual officers now seek summary judgment on all counts except for the claim of excessive force. Thompson has simplified the matter by conceding that the Defendants are entitled to summary judgment on all but one claim – a false arrest claim arising from the second arrest. With respect to that contested claim, Thompson is correct that genuine issues of material fact remain; thus that portion of the Motion must be denied.

## BACKGROUND

This case pivots on three traffic-related incidents involving Thompson. The first took place on June 25, 2006, when Thompson was arrested by Officer Greg Martin and booked on

charges of operating a vehicle as a habitual traffic offender, operating while intoxicated, false informing, disregarding a stop sign, and driving left of center. [DE 84-2 at 2.] The second incident took place on April 17, 2007, when Officer Sam Finnegan accused Thompson of driving a red BMW. [DE 84-3 at 2.] Thompson was later arrested as a result of this incident and charged with operating a vehicle while a habitual traffic violator. [DE 84-1 at 9-10.] The final incident occurred on May 30, 2007, when Lieutenant Jay Richardson cited Thompson for failure to wear a seatbelt while riding as a passenger in a vehicle. [DE 84-4 at 1-2.]

Because of the way the briefing has unfolded for this Motion, only the facts of the incident on April 17, 2007 are of present importance. There are two sides to the story, but here is what Officer Finnegan says happened: he was on patrol duty that day when he observed a red BMW drive past him. [DE 84-3 at 1.] Finnegan believed the driver was attempting to hide his identity because, as the car drove past Finnegan, the driver turned his face away from him. [*Id.*] Finnegan ran the license plate and found that the car was registered to Thompson, who Finnegan knew to be a habitual traffic offender. [*Id.* at 2.] Finnegan drove to Thompson's residence, where he claims he saw Thompson in the BMW in the driveway. [*Id.*] Finnegan asked Thomspon for his license and told Thompson that he had seen him driving the car earlier. [*Id.*] According to Finnegan, Thompson initially denied that he had been driving the vehicle earlier. [*Id.*] But after Finnegan spoke to Thompson's mother, Thompson admitted that he had been driving the BMW. [*Id.*] Finnegan did not arrest Thompson at that point, but he told Thompson he would inform the county prosecutor's office that Thompson was operating a vehicle while a habitual traffic violator. [*Id.*] Several days later officers from the Miami County Sheriff's Department arrested Thompson pursuant to an arrest warrant. [DE 84-1 at 9.] Thompson was

2

arrested at his residence. [*Id*.] But oddly, and for reasons that are not particularly clear, the arrest warrant was executed in the wee hours of the night. [*Id*.]

Thompson tells a different story about what happened on April 17, 2007. He flatly denies ever driving the BMW that day. [DE 86-1 at 14.] Thompson says that the BMW was in the garage when Finnegan arrived at the house. [*Id*.] According to Thompson, Finnegan approached him in his driveway and accused him of having driven that day. [*Id*.] Thompson denied it, and an argument ensued. [*Id*.] At no point did Thompson ever admit to having driven that day, and to this day he steadfastly denies that he was driving on April 17, 2007. [*Id.*] To support his side of the story, Thompson points to the fact that Finnegan didn't bother to arrest him on the spot and instead waited several days to obtain an arrest warrant. [DE 86 at 5.]

## DISCUSSION

As noted earlier, the vast majority of Thompson's Complaint against the Defendants can be quickly disposed of because Thompson conceded that they are entitled to summary judgment on all but one issue. Thompson accepts that: 1) he has no claim for false arrest against Officer Martin in conjunction with the June 25, 2006 arrest (though this in no way affects the viability of his claim of excessive force against Officer Martin, which all parties agree is not yet ripe for summary judgment); 2) he has no claim for false arrest against Lieutenant Richardson in conjunction with the May 30, 2007 traffic citation; 3) he has no claim for conspiracy; and 4) he has no claim against the Peru Police Department or the City of Peru. All of those claims will thus be dismissed.

That only leaves Thompson's claim that Officer Finnegan violated his Fourth Amendment rights by arresting him without probable cause on the April 17, 2007. Finnegan

3

argues that summary judgment is appropriate on this claim because he had probable cause to arrest Thompson or, alternatively, because he is entitled to qualified immunity.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "At summary judgment, 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Paz v. Wauconda Healthcare and Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). Moreover, this Court must construe "the record in the light most favorable to the nonmovant" and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne*, 337 F.3d at 770 (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants").

Viewing the record in the light most favorable to Thompson, I cannot grant summary judgment in Finnegan's favor. Probable cause exists when "the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part." *U.S. v. Sawyer,* 224 F.3d 675, 679 (7th Cir. 2000). Here, however, we simply do not know what "the totality of the circumstances" are because a genuine factual dispute exists. Under Thompson's recounting of the facts, he never drove the red BMW on April 17, 2007. If this is true – if Thompson did not drive that day – then Finnegan would obviously not have a reasonable basis for believing that probable cause existed to arrest Thompson for operating a vehicle while a habitual traffic violator.

Nor will qualified immunity protect Finnegan at this stage in the case. In an unlawful arrest case in which a qualified immunity defense is raised, courts are to "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). If the officers can establish that they had "arguable probable cause" to arrest the plaintiff, then the officers are entitled to qualified immunity. *Id.* Accordingly, a district court may grant summary judgment if it finds that "a reasonable police officer in the same circumstances and with the same knowledge ... as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)). *See also Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010) (summarizing the basic principles governing the law of qualified immunity).

In this case, however, we don't know what "a reasonable police officer in the same circumstances" would do because we don't even know definitively what the "circumstances" were. That is, in order to know whether Officer Finnegan "could have reasonably believed" that he had probable cause to make an arrest, the Court would have to choose one of the competing versions of events. This would be inappropriate, as Seventh Circuit has discussed:

> The problem with the application of the "arguable probable cause" concept to the present case is that it is not at all clear, at this stage in the litigation, what facts were within [the officer's] knowledge at the time he arrested [plaintiff]. . . . When, as here, the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law. . . . Because the facts within [the officer's] knowledge at the time of the arrest are a matter of dispute between

5

the parties, summary judgment on the basis of "arguable probable cause" . . . is inappropriate.

*Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003) (citation omitted). *See also Ryan-Louie v. DeFazio*, No. 2:05-CV-249, 2007 WL 433067, at *7 (N.D. Ind. Feb. 2, 2007) (denying summary judgment on qualified immunity grounds when an genuine issue of material fact existed); *Shemenski v. Chapieski*, No. 03 C 0861, 2005 WL 991831, at *17 (N.D. Ill. Apr. 13, 2005) (denying summary judgment on qualified immunity grounds when "facts are in dispute as to the circumstances surrounding [the alleged false] arrest.").

Part of the reason that Finnegan thinks that he had probable cause to arrest Thompson is because – according to Finnegan – Thompson admitted to him that he had been driving that day. But Thompson denies having said any such thing. Therefore, just as I can't determine whether Finnegan had probable cause, I can't determine whether Finnegan reasonably believed that there was probable cause.

And for all the same reasons, any state tort claims Thompson may have arising out of Finnegan's actions also cannot be dismissed. The Indiana Tort Claims Act shields governmental entities and governmental employees acting within the scope of their employment from liability if a loss results from the enforcement of a law – unless, however, the act of enforcement constitutes false arrest or false imprisonment. Ind. Code § 34-13-3-3(8). Thus, since it is still possible that Finnegan's actions constituted a false arrest, it is still possible that tort liability flows from these actions.

Ultimately, Finnegan is asking me to credit his version of what happened on April 17, 2007 over what Thompson says took place. But that will be for a jury to sort out.

## CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion for Summary Judgment [Doc. 45] is hereby **GRANTED, in part** and **DENIED, in part**. The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendants Peru Police Department and Jay Richardson. The claims brought by Plaintiff for false arrest against Greg Martin are dismissed. The claims brought by Plaintiff for false arrest against Sam Finnegan survive summary judgment, as described more fully above, and shall proceed to trial.

All parties are also reminded of the telephonic status conference set for November 18, 2010 at 01:00 PM and the requirement that they email the Case Management Clerk at simon_chambers@innd.uscourts.gov by November 15, 2010 to notify the Court of the attorney participating in the conference and the telephone number to be used.

**SO ORDERED**.

ENTERED: November 10, 2010.

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT